# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

INDAH WILSON,

        Plaintiff,

        v.

ON THE RISE ENTERPRISES, LLC, *et al.*,

        Defendants.

Civil Action No. 16-2241 (BAH)

Chief Judge Beryl A. Howell

## <u>MEMORANDUM OPINION</u>

Plaintiff Indah Wilson alleges that she has worked for over ten years at the restaurant Oohhs & Aahhs ("Restaurant") in Washington, D.C., without ever being paid a wage. Compl. ¶¶ 1, 7, 15, ECF No. 1. The plaintiff brings claims for minimum and overtime wages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and the D.C. Wage Payment Act ("WPA"), D.C. Code § 32-1301 *et seq.*, and common law fraud against her alleged employers, defendants On the Rise Enterprises, LLC ("OTR"), Oji. A. Abbott, and Dominique R. Brooks. *Id.* ¶¶ 25–44, 66–74. Alternatively, the plaintiff seeks a declaration that she is entitled to a fifty percent stake in the Restaurant, an injunction requiring the defendants to convey her such stake, and an accounting of all of the Restaurant's revenues and expenses since its opening. *Id.* ¶¶ 45–65. Pending before the Court are the defendants' motions to dismiss on grounds that the plaintiff's claims are time-barred or otherwise not cognizable. *See* Abbott & OTR's Mot. Dismiss, ECF No. 8. Defendant Brooks also asserts that he is not properly a defendant to this action. Brooks's Mot. Dismiss ("Brooks's Mot."), ECF No. 16; Brooks' Mem. Supp. Mot. ("Brooks' Mem.") at 2–3, ECF No. 16–1. For the reasons set out below, the defendants' motions to dismiss are denied in part and granted in part, without prejudice.

## I. BACKGROUND

The plaintiff, a Maryland resident, alleges that she "founded the Restaurant along with her boyfriend, Defendant Oji Abbott," Compl. ¶¶ 1, 2, and then worked at the Restaurant for over ten years without receiving a paycheck, in the belief that she "was an owner of a fifty percent (50%) interest in the Restaurant," *id*. ¶¶ 2, 7, 46. The complaint provides few details about the plaintiff's background, such as her level of education or restaurant-related skills, but she alleges that she "frequently and usually" worked in excess of fifty hours per week while "manag[ing] the day-to-day operations" and "marketing" at the Restaurant. *Id.* ¶¶ 8, 50, 68. The plaintiff further alleges that "[d]ue in significant part to [plaintiff's] efforts to promote the Restaurant," *id*. ¶ 1, she helped the Restaurant to grow in "popularity and success," *id*. ¶ 10, and earn media exposure in the *Washington Post*, *Washingtonian Magazine*, and Food Network's "Diners, Drive-Ins and Dives," *id.* ¶ 1. By contrast to the plaintiff's role, "Abbott's role in the Restaurant allowed him to exercise dominion and control over the business records and organization and structure of the Restaurant." *Id*. ¶ 68.

Abbott allegedly incorporated Oohhs & Aahhs, Inc. in 2003 "to obtain permits and licenses for the Restaurant." *Id.* ¶ 5. "Abbott did not inform [the plaintiff] of his use of this entity and did not disclose [to her] the details of the entity . . . ." *Id.* The plaintiff "did not ask to inspect the initial paperwork establishing the Restaurant or its ownership" due to "her trust in [Abbott] and her unfamiliarity with the business and legal aspects of establishing a restaurant." *Id.* ¶ 4.

On or about May 3, 2012, "after the Restaurant had been operating for nearly a decade," Abbott and his "family member," defendant Brooks, established OTR, without the plaintiff's knowledge, to "own and operate the Restaurant." *Id.* ¶¶ 3, 6. Although Brooks allegedly provided "start-up money" for the Restaurant, he has played no "active role" in the Restaurant's

operation, as he was imprisoned shortly after the Restaurant opened. *Id.* ¶¶ 3, 11. The defendants "did not include [the plaintiff] in the [LLC's] organizational documentation." *Id.* ¶ 6. At all relevant times, the defendants "maintained exclusive control over the financial and business records of the Restaurant." *Id.* ¶ 54.

Over the course of the plaintiff's employment, Abbott repeatedly represented to the plaintiff and held out to the public that the plaintiff owned a fifty percent stake in the Restaurant. *Id.* ¶¶ 47, 51. Abbott also represented to the plaintiff "that he would 'take care of her'" and "pay for her modest living expenses with proceeds from the Restaurant." *Id.* ¶ 7. Placing "her trust in Abbott," the plaintiff worked at the Restaurant without pay for years, believing all the while that "she was, in fact, the owner of fifty-percent of the Restaurant." *Id.* Unbeknownst to the plaintiff, however, Abbott "concealed the existence of" and "surreptitiously redirected" Restaurant profits from the plaintiff to himself and Brooks. *Id.* ¶ 10.

The plaintiff's personal relationship with Abbott "began to erode" in late 2014, at which time the plaintiff sought from Abbott an accounting of the Restaurant's financial information "to ascertain her exact ownership interest in the Restaurant." *Id.* ¶ 12. Abbott responded that the plaintiff "was 'owed nothing'" and "would 'get nothing.'" *Id.* ¶ 13. Abbott "suddenly stop[ped] paying any of [the plaintiff's] living expenses" and told the plaintiff "that she would now be responsible for [making] mortgage" payments "on the home in which [the two] had lived since 2005." *Id.* ¶ 14. Having never received payment for her work at the Restaurant, the plaintiff "had no savings to cover her expenses." *Id.* The plaintiff continues to work at the Restaurant, yet "Abbott still fails and refuses to pay [her] proper wages for her time." *Id.* ¶ 15.[1]

---

[1] The defendants posit that "[i]t strains credulity" to suppose that the plaintiff continued to work without pay at the Restaurant for three additional years after her romantic relationship with Abbott ended and she learned that she held no equity interest in the Restaurant. Abbott & OTR's Mem. Supp. Mot. Dismiss ("Abbott's Mem.") at 3, ECF No. 12. To the contrary, in the face of the defendants' alleged fraudulent concealment, the plaintiff may

The plaintiff filed the Complaint in November 2016, approximately two years after allegedly being first informed by Abbott that she held no ownership interest in the Restaurant. The Complaint asserts seven claims under two alternative theories: if the plaintiff was an employee, despite Abbott's statements to her and others that plaintiff held a half-ownership interest in the Restaurant, she is owed minimum and overtime wages under the FLSA and the WPA, *id.* ¶¶ 25–74, both of which statutes authorize the payment of liquidated damages in the amount of double or quadruple the amount of unpaid wages. *See* 29 U.S.C. § 216(b); D.C. Code § 32-1308(a)(1)(A)(ii). Thus, Counts I and II seek accrued minimum and overtime wages, respectively, under the FLSA, Compl. ¶¶ 25–37, and Count III seeks accrued wages under the WPA, *id.* ¶¶ 38–44.

Alternatively, if the defendants have defrauded the plaintiff of the half-ownership interest in the Restaurant, which interest she believed she held based upon Abbott's oral promises, statements to others, and conduct, she seeks declaratory, injunctive, and accounting relief. *Id.* ¶¶ 25–74. Specifically, Count IV seeks a declaration that the plaintiff "is an equitable owner of a fifty-percent share of the Restaurant and/or LLC, and any other relief deemed appropriate by the Court." *Id.* ¶ 52. Count V seeks an injunction compelling the defendants "to convey fifty-percent ownership of the Restaurant and/or LLC to [the plaintiff]" as well as "such other and further relief as may be just and equitable." *Id.* ¶ 58. Count VI seeks an accounting of "all revenue and expenses of the Restaurant from 2003 through current . . . fully and completely

---

plausibly have maintained her presence at the restaurant to monitor and protect any interest to which she believes she is entitled in the Restaurant. Indeed, the complaint expresses that the plaintiff "is fearful" that the defendants "may attempt to divert assets, alter or destroy the business records of the Restaurant, or otherwise attempt to conceal the value of Wilson's ownership interest." Compl. ¶ 65; *see also id.* ¶ 55. In any event, whether the plaintiff continued to work at the restaurant since 2014 is a quintessential dispute of fact for which resolution is inappropriate at the motion to dismiss stage. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations.").

account[ing] for all disbursements of any sums from the revenue of the Restaurant, including cash disbursements, from 2003 through current," as well as entry of judgment against the defendants "in the amount found to be due to [the plaintiff] on such accounting" and "such other and further relief as may be just and equitable." *Id.* ¶ 65. Finally, Count VII seeks damages, under a theory of common law fraud, "in the amount of the value of fifty-percent interest in the Restaurant in compensatory damages; punitive damages to be determined at trial, plus interest and costs," and "such other and further relief as may be just and equitable." *Id.* ¶ 74.

All three defendants seek dismissal of all claims against them. Abbott & OTR's Mot. Dismiss; Abbott & OTR's Mem. Supp. Mot. Dismiss ("Abbott's Mem."), ECF No. 12; Brooks' Mot.; Brooks' Mem. at 2–3.[2]

## II. LEGAL STANDARD

A district court must dismiss a complaint that "fail[s] to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In ruling on a motion to dismiss for failure to state a claim, the court accepts as true "all the [factual] allegations in the complaint . . . (even if doubtful in fact)" that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679.

---

[2]      The defendants' memoranda largely mirror one another, save for Brooks' argument that he is not a proper defendant, and are collectively referenced as "Defs.' Mem." unless otherwise noted, with all pincites referring to Abbott and OTR's memorandum.

Fraud claims are subject to a heightened pleading standard. *See* Fed. R. Civ. P. 9(b). "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud," though "conditions of a person's mind may be alleged generally." *Id.* To satisfy Rule 9(b), a plaintiff must "set[] forth in sufficient detail the time, place, and manner" of the alleged fraudulent scheme, so as "to guarantee all defendants sufficient information to allow for preparation of a response." *United States ex rel. Heath v. AT&T, Inc.*, 791 F.3d 112, 123 (D.C. Cir. 2015) (internal quotation marks and citation omitted). Such information often includes "specific fraudulent statements, who made the statements, what was said, when or where these statements were made, and how or why the alleged statements were fraudulent." *Brink v. Cont'l Ins. Co.*, 787 F.3d 1120, 1127 (D.C. Cir. 2015) (citation omitted). "[A]lthough Rule 9(b) does not require plaintiffs to allege every fact pertaining to every instance of fraud when a scheme spans several years, defendants must be able to defend against the charge and not just deny that they have done anything wrong." *United States ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) (internal quotation marks and citation omitted).

A defendant may raise a statute of limitations defense "in a pre-answer motion under . . . Rule[] 12(b)." *Smith-Haynie v. District of Columbia*, 155 F.3d 575, 577 (D.C. Cir. 1998). The D.C. Circuit, however, has cautioned that "courts should hesitate to dismiss a complaint on statute of limitations grounds based solely on the face of the complaint." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996). "Because statute of limitations issues often depend on contested questions of fact, dismissal is appropriate only if the complaint on its face is conclusively time-barred." *Bregman v. Perles*, 747 F.3d 873, 875 (D.C. Cir. 2014) (alteration omitted) (quoting *de Csepel v. Republic of Hungary*, 714 F.3d 591, 603 (D.C. Cir. 2013)). "A court should dismiss with prejudice only if it determines the plaintiff 'could not possibly cure the

deficiency' by alleging new or additional facts." *United States ex rel. Shea v. Cellco P'ship*, 863 F.3d 923, 936 (D.C. Cir. 2017) (quoting *Firestone*, 76 F.3d at 1209).

## III.    DISCUSSION

The defendants seek to dismiss each of the plaintiff's counts on grounds that (1) the plaintiff's FLSA and WPA claims, in Counts I through III, are barred by statutes of limitations, Defs.' Mem. at 2–4; (2) the WPA claim in Count III is not cognizable because this local statute governs only "*when* an employer must pay," not "*what* an employer must pay," and requires only that "when there is a dispute over the amount owed," the employer "pay the undisputed amount," *id.* at 5; (3) the claims for declaratory, injunctive, and accounting relief, in Counts IV through VI, are mere remedies to which the plaintiff is entitled only by prevailing on an independent claim, *id.* at 6–9; and (4) the fraud claim, in Count VII, is not plead with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure, *id.* at 10–13.  Brooks also argues that the plaintiff's claims against him should be dismissed because the plaintiff has failed to allege facts that, if believed, establish his liability as an employer.  Brooks' Mem. at 2–3.

For the reasons that follow, the plaintiff has pleaded valid claims for minimum and overtime wages under FLSA and the WPA (Counts One through Three), but has not adequately pleaded claims for fraud, or for declaratory, injunctive, or accounting relief (Counts Four through Seven).  Accordingly, Counts Four through Seven are dismissed without prejudice, and the defendants' motions to dismiss are denied in all other respects.

### A.  The Plaintiff's FLSA Claims Are Not Time-Barred.

The plaintiff brings claims under the FLSA for unpaid minimum and overtime wages that she alleges accrued over the course of her decade-long employment at the Restaurant.  *See* Compl. ¶¶ 25–37.  Given that the factual allegations in the complaint are assumed to be true, the

defendants do not now dispute that the plaintiff was entitled to, and that they failed to pay her, such wages. Instead, the defendants contend that FLSA's statute of limitations bars any claim for unpaid wages the plaintiff might have. Defs.' Mem. at 3–4. The plaintiff contends that the FLSA's statute of limitations was tolled by the defendants' willfully concealing their violations and causing the plaintiff to believe that she held a fifty percent equity interest in the Restaurant, making her exempt from coverage of the FLSA. *See* 29 U.S.C. § 213(a)(1) (exempting from coverage of FLSA's minimum wage provisions "any employee employed in a bona fide executive, administrative, or professional capacity"); 29 C.F.R. § 541.101 (defining the term "employee employed in a bona fide executive capacity" to include "any employee who owns at least a bona fide 20–percent equity interest in the enterprise in which the employee is employed, . . . and who is actively engaged in its management"). Under the FLSA, the plaintiff's argument is persuasive at this early stage of the case, and therefore, as explained more fully below, the plaintiff's FLSA claims are not time-barred. [3]

The FLSA requires an employer to pay to each employee within the Act's scope a minimum wage of $7.25 an hour, subject to certain exceptions. 29 U.S.C. § 206(a)(1)(C). [4] In addition, an employer is required to pay an employee wages for work in excess of forty hours per week, "at a rate not less than one and one-half times the regular rate at which [s]he is employed." *Id.* § 207(a)(1). Any action under the FLSA "to enforce any cause of action for unpaid minimum

---

[3]     The plaintiff also argues that "the lulling doctrine" and "discovery rule" toll FLSA's statute of limitations as well. Pl.'s Opp'n Defs.' Mot. Dismiss ("Pl.'s Opp'n") at 6, ECF No. 11-1. These doctrines, discussed further *infra* Part III.B, are similar in substance to the equitable tolling doctrine under the FLSA.

[4]     Between July 24, 2008 and July 24, 2009, the minimum wage was $6.55 an hour; between July 24, 2007 and July 24, 2008, the minimum wage was $5.85 an hour. 29 U.S.C. § 206(a)(1)(A)-(B). At all relevant times prior to July 24, 2007, the minimum wage was $5.15 an hour. Minimum Wage Increase Act of 1996, Pub. L. No. 104-188, § 2104(b), 110 Stat. 1928, 1928–29 (1996) (amended 2007). FLSA's wage provisions apply to an employee "who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce." 29 U.S.C. § 206(a). The defendants do not dispute that FLSA covered and covers the plaintiff.

wages" or "unpaid overtime compensation" must "be commenced within two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." *Id.* § 255(a). A violation of the FLSA is "willful" if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Rhea Lana, Inc. v. Dep't of Labor*, 824 F.3d 1023, 1031 (D.C. Cir. 2016) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)).

"Read into every federal statute of limitations," however, "is the equitable doctrine that in case of defendant's fraud or deliberate concealment of material facts relating to his wrongdoing, time does not begin to run until plaintiff discovers, or by reasonable diligence could have discovered, the basis of the lawsuit." *Fitzgerald v. Seamans*, 553 F.2d 220, 228 (D.C. Cir. 1977). "[F]raudulent concealment tolls a statute of limitations when (1) there has been 'deliberate concealment' of (2) 'material facts' relating to the alleged wrongdoing and (3) the wronged party does not know of those facts and could not have discovered them through 'reasonable diligence.'" *Int'l Ass'n of Machinists & Aerospace Workers, AFL-CIO, Dist. Lodge 64 v. NLRB* ("*Aerospace Workers*"), 130 F.3d 1083, 1087 (D.C. Cir. 1997). A court grants equitable tolling "in extraordinary and carefully circumscribed circumstances, . . . such as where despite all due diligence [a plaintiff] is unable to obtain vital information bearing on the existence of her claim." *Norman v. United States*, 467 F.3d 773, 776 (D.C. Cir. 2006) (alteration in original) (internal quotation marks and citation omitted). This may occur "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Id.* (internal quotation marks omitted); *see also Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 559 (1974) ("[I]n cases where the plaintiff has refrained from commencing suit during the period of

limitation because of inducement by the defendant, or because of fraudulent concealment, this Court has not hesitated to find the statutory period tolled or suspended by the conduct of the defendant." (internal citations omitted)).

The defendants do not dispute that the plaintiff is an "employee" within the FLSA's meaning, that the plaintiff was entitled to minimum and overtime wages, or even that they failed to pay the plaintiff such wages. The defendants assert only that the FLSA's statute of limitations prevents the plaintiff from bringing an action to collect the wages due to her. *See* Defs.' Mem. at 2–4. The plaintiff alleges that she has worked at the Restaurant since 2003, frequently working over 50 hours per week, but was never paid for her labor. Compl. ¶¶ 5, 7–8, 15. Despite representing to the plaintiff and indicating publicly that the plaintiff held a fifty percent ownership stake in the Restaurant, *id.* ¶¶ 6, 47, 49–52, Abbott apparently did not include the plaintiff's name in the Restaurant's organizational documentation, *id.* ¶¶ 5–6. Not until the end of 2014, when the plaintiff ended her romantic relationship with Abbott and sought an accounting of the Restaurant's revenues and expenses, did Abbott inform the plaintiff that she held no ownership stake in the Restaurant. *Id.* ¶ 12.

Whether the plaintiff co-owned, or was led to believe she co-owned, the Restaurant is material to the defendants' FLSA violations, as one who reasonably believed she held equity in the Restaurant would have no reason to inquire as to why she did not receive wages. *See Aerospace Workers*, 130 F.3d at 1087. The plaintiff certainly could have done more over the years she worked at the Restaurant to demand inspection of the organizational documents to ensure and confirm that the ownership interest she expected and says she was promised, was formally realized, but that is not the test. Instead, whether the plaintiff exercised reasonable diligence turns on consideration of the circumstances. *Veltri v. Bldg. Serv. 32B-J Pension Fund*,

393 F.3d 318, 323 (2d Cir. 2004) ("Where defendant is responsible for concealing the existence of plaintiff's cause of action, . . . [t]he relevant question is not the intention underlying defendants' conduct, but rather whether a reasonable plaintiff in the circumstances would have been aware of the existence of a cause of action."); *Bills v. Clark*, 628 F.3d 1092, 1101 (9th Cir. 2010) (reversing dismissal of prisoner's habeas petition as untimely for district court's failure to conduct "the overall assessment of the totality of circumstances that goes into the equitable determination" of tolling the limitations period).

Here, the plaintiff has alleged that by tricking or deceiving her, Abbott prevented her from learning of her FLSA cause of action within the statutory period, warranting equitable tolling of the limitation period to prevent inequity. In assessing the reasonable diligence of the plaintiff, the pertinent circumstances are that: (1) the plaintiff relied on the promises and statements of Abbott expressed over a period of years to both the plaintiff and to others, that she co-owned the Restaurant; (2) as her boyfriend, with whom she resided, the plaintiff relied on Abbott's trustworthiness; (3) in the operation of the Restaurant, Abbott "maintained exclusive control over the financial and business records," Compl. ¶ 54, to such extent that he refused to provide the plaintiff with an accounting, *id*. ¶ 13; and (4) the plaintiff first learned that she did not have half-ownership of the Restaurant "toward the end of 2014," *id*. ¶ 12. These allegations adequately explain that the plaintiff's failure to bring her FLSA claims within the period allowed by the statute of limitations was due not to the plaintiff's lack of "diligence," but to the defendants having "induced or tricked" her "into allowing the filing deadline to pass." *Norman*, 467 F.3d at 776.

That the plaintiff knew, at all times, she was not receiving wages—a fact the defendants emphasize, *see* Abbott's Reply Pl.'s Opp'n at 2–3, ECF No. 13—is beside the point. The

material fact that the defendants concealed from the plaintiff was not that she did not receive wages, but that she, as an employee rather than a half owner, was entitled to such wages. FLSA's statute of limitations thus does not bar the plaintiff's minimum and overtime wage claims.[5]

### B. The Plaintiff Has Pleaded Cognizable WPA Claims.

The plaintiff brings claims in Count III under the WPA, which authorizes "civil action[s]" to recover "payment of any back wages unlawfully withheld," "[l]iquidated damages equal to treble the amount of unpaid wages," "[s]tatutory penalties," and "[s]uch legal or equitable relief as may be appropriate." D.C. Code § 32-1308(a)(1)(A).[6] The defendants seek dismissal of the plaintiff's WPA claims on the grounds that (1) the WPA cognizes claims regarding only when wages must be paid, not the amount of wages due; and (2) the plaintiff's claims are time-barred. Defs.' Mem. at 3–5. For the reasons that follow, each of these arguments fail.

### 1. The WPA Cognizes Minimum and Overtime Wage Claims.

The WPA requires that "[a]n employer shall pay all wages earned to his or her employees on regular paydays designated in advance." D.C. Code § 32-1302. As discussed above, the defendants do not dispute that the plaintiff "earned," *id.*, wages, but argue that the WPA merely "governs the timing of wage payments," while a separate statute, the D.C. Minimum Wage Act

---

[5]      The defendants urge that the Court decline to exercise supplemental jurisdiction over the plaintiff's District of Columbia wage and common law claims should the plaintiff's FLSA claims be dismissed. Defs.' Mem. at 13–15; *see Shekoyan v. Sibley Int'l*, 409 F.3d 414, 423 (D.C. Cir. 2005) (noting that Court "may choose to retain jurisdiction over, or dismiss, pendent state law claims after federal claims are dismissed" (citing 28 U.S.C. § 1367(c)(3))). Since dismissal of the plaintiff's FLSA claim is denied, the Court retains jurisdiction over the plaintiff's pendent D.C. law claims.

[6]      The WPA defines "wages" as "all monetary compensation after lawful deductions, owed by an employer, whether the amount owed is determined on a time, task, piece, commission, or other basis of calculation," including a "[b]onus," "[c]omission," "[f]ringe benefit[] paid in cash," "[o]vertime premium," and "[o]ther renumeration promised or owed." D.C. Code § 32-1301(3).

("MWA"), D.C. Code § 32-1001 *et seq.*, "provides the exclusive remedy for a plaintiff who alleges a right to be paid minimum wages and overtime wages under D.C. law." Defs.' Mem. at 4–5. The defendants cite, with minimal discussion, *Escobar Iraheta v. Magic Meals, Inc.*, which determined that "[t]he [MWA] governs *what* an employer must pay, whereas [the WPA] governs *when* an employer must pay." 201 F. Supp. 3d 172, 174 (D.D.C. 2016) (Collyer, J.) (emphasis in original), *vacated sub nom. Iraheta v. Magic Meals, Inc.*, No. 15-cv-1121 (RMC), 2017 WL 1086625 (D.D.C. Feb. 22, 2017).[7] "Just as the plaintiff in [*Escobar*] *Iraheta* complained about the amount he was (not) paid," the defendants argue, the plaintiff's "complaint is about the amount she was (not) paid." Defs.' Mem. at 5.

By its own terms, however, the WPA provides that an employer "*shall* pay *all* wages earned . . . on regular paydays designated in advance." D.C. Code § 32-1302 (emphasis added). As other Judges on this Court have recognized, the WPA's broad language governs not only the timing of wage payments, but also the amount of wages that must be paid. *See, e.g.*, *Akinsinde v. Not-For-Profit Hosp. Corp.*, 216 F. Supp. 3d 33, 43 (D.D.C. 2016) (Mehta, J.) ("[T]he crux of Plaintiff's claim is that she routinely was not paid for the break-time hours that she worked . . . . [S]he sufficiently pleaded a violation of the [WPA]."); *Ayala v. Tito Contractors, Inc.*, 82 F. Supp. 3d 279, 287 (D.D.C. 2015) (Boasberg, J.) ("[A]lleg[ations] . . . that Defendants . . . paid *nothing at all* to two Plaintiffs for certain hours worked . . . [are] the type of claim[s] that the [WPA], by its plain terms, was intended to remedy."); *Ventura v. Bebo Foods, Inc.*, 738 F. Supp. 2d 1, 6 (D.D.C. 2010) (Lamberth, C.J.) (concluding that a defendant was liable for "violations of [the WPA's] wage and overtime provisions"). That the WPA governs *when* wages

---

[7]     The *Escobar Iraheta* parties ultimately settled, and the Court's memorandum opinion was vacated pursuant to an order granting the parties' consent motion to vacate. Order, *Iraheta*,, 2017 WL 1086625, at *1. Moreover, as discussed further *infra*, other Judges on this Court have reached contrary constructions of D.C. Code § 32-1302.

must be paid does not mean that the statute does not also govern *what* wages must be paid.  After all, an employer fails to pay "all wages earned," D.C. Code § 32-1302, by failing to pay either by the required date or the full amount due.[8]

Likewise, whether a claim under the MWA also might lie against the defendants simply has no bearing on whether the plaintiff has a claim under the WPA.[9]

In the alternative, even accepting the defendants' erroneous contention that the WPA governs only timing of wages, the plaintiff pleads a valid WPA claim.  The plaintiff's allegation that the defendants never paid her wages due, *see* Compl. ¶ 7, logically and necessarily encompasses an allegation that the defendants did not pay her wages due "on regular paydays designated in advance." D.C. Code § 32-1302.

The plaintiff's WPA claim in Count III thus is cognizable.

### 2.  *The Plaintiff's WPA Claim Is Not Time-Barred.*

The defendants also argue that "any claim for wages that [the plaintiff] may have that predates November 11, 2013 is absolutely time-barred under" the WPA.  Defs.' Mem. at 4.

---

[8]	To bolster their interpretation of the WPA, the defendants cite D.C. Code § 32-1304 as "expressly provid[ing] that when there is a dispute over the amount owed, the employer is required only to pay the undisputed amount to comply with the Act." Defs.' Mem. at 5.  The defendants' interpretation of the cited WPA provision is incorrect.  This provision, as clarified in a 2015 amendment, directs an employer, who has a "bona fide dispute concerning the amount of wages due" to "give written notice to the employee of the amount of wages which he concedes to be due, and shall pay such amount, without condition," within the appropriate period, and further makes plain that "acceptance by the employee of any payment" of wages conceded to be due "shall not constitute a release as to the balance of h[er] claim." D.C. Code § 32-1304, *amended by* D.C. Law 20-157, § 2(c), 61 D.C. Reg. 10157 (Feb. 26, 2015); *see also* D.C. Law 20-157, § 2(c) (amending § 32-1304); Letter from Vincent C. Gray, Mayor of the Dist. of Columbia, to the Hon. Phil Mendelson, Chairman, Council of the Dist. of Columbia at 4 (Dec. 2, 2014), http://lims.dccouncil.us/Download/31673/B20-0790-Mayor-s-Letter-regarding-Legislative-Meeting1.pdf (describing the proposed WPA amendment as largely clarifying).  Thus, contrary to the defendants' wishful interpretation that this provision somehow relieves an employer of the obligation to pay statutorily required wages, WPA's current language plainly holds an employer on the hook for unpaid wages legally due, regardless of whether the employer admits those wages are owed.

[9]	The plaintiff requests, "[i]n the event the Court grants Defendants' Motion to Dismiss," that she "be permitted an opportunity to amend the Complaint in order to cure any deficiencies in the pleading." Pl.'s Opp'n at 19.  Although the plaintiff has pleaded a cognizable claim under the WPA, the plaintiff may seek leave to amend her complaint to add claims under the MWA.  *See* FED. R. CIV. P. 15(a)(2).

WPA claims "must be commenced within 3 years after the cause of action accrued, or of the last occurrence if the violation is continuous, or the cause of action shall be forever barred." D.C. Code § 32-1308(c)(1). "This period is tolled," however, "[d]uring any period that the employer fails to provide the complainant with actual or constructive notice of the employee's rights." *Id.* § 32-1308(c)(2)(B). In addition to the statutory tolling provision, D.C. law also recognizes two tolling doctrines of general applicability: (1) the "lulling doctrine," by which "affirmative acts employed by a party to fraudulently conceal either the existence of a claim or facts forming the basis of a cause of action toll the running of limitations periods," *Daniels v. Potomac Elec. Power Co.*, 100 A.3d 139, 142 (D.C. 2014) (citations omitted), and (2) the "discovery rule," which "prevent[s] the accrual of a cause of action before an individual can reasonably be expected to discover that he has a basis for legal redress," *East v. Graphic Arts Indus. Joint Pension Tr.*, 718 A.2d 153, 157 (D.C. 1998) (citation omitted).

Dismissal of a claim on statute of limitation grounds "is appropriate only if the complaint on its face is conclusively time-barred." *Bregman*, 747 F.3d at 875 (quoting *de Csepel*, 714 F.3d at 603). This is not the case here for at least two reasons. First, the plaintiff alleges a continuous WPA violation that persists to the present day. *See* Compl. ¶¶ 7, 15. Accepting these factual allegations as true, the plaintiff necessarily brought her suit within three years of the allegedly WPA-violating conduct's "last occurrence." D.C. Code § 32-1308(c)(1). Second, even if the WPA's three-year statute of limitations for non-continuous violations applied, the defendants' conduct tolled the statute of limitations under the WPA itself by "fail[ing] to provide the [plaintiff] with actual or constructive notice of [her] rights," for essentially the same reasons that such conduct equitably tolled FLSA's statute of limitations, the lulling doctrine, and the

discovery rule.  *See* D.C. Code § 32-1308(c)(2)(B); *Daniels*, 100 A.3d at 142; *East*, 718 A.2d at 157.

Accordingly, the WPA's statute of limitations does not bar the plaintiff's WPA claim.

### C.  The Plaintiff Has Failed To Plead Fraud With Adequate Particularity.

The defendants seek dismissal of the plaintiff's claims for common law fraud on the ground that her complaint does not satisfy Rule 9(b)'s pleading standard for fraud claims.  Defs.' Mem. at 10–13.  Rule 9(b) requires a plaintiff "alleging fraud" to "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  While the plaintiff has generally alleged that Abbott made "representations that he would 'take care of her,'" Compl. ¶¶ 7, 9, and "[o]n numerous occasions," *id.* ¶ 67, "represented to [plaintiff] and others that [plaintiff] was indeed an owner of the Restaurant," *id.* ¶¶ 47, 60, 67; *see also id.* ¶¶ 49, 52, 54, these factual allegations nonetheless lack the specificity required under Rule 9(b).

Under District of Columbia law, "[t]he essential elements of common law fraud are: (1) a false representation (2) in reference to material fact, (3) made with knowledge of its falsity, (4) with the intent to deceive, and (5) action is taken in reliance upon the representation."  *Va. Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226, 1233 (D.C. 2005) (quoting *Atraqchi v. GUMC Unified Billing Servs.*, 788 A.2d 559, 563 (D.C. 2002)); *accord McMullen v. Synchrony Bank*, 164 F. Supp. 3d 77, 95 (D.D.C. 2016) (Boasberg, J.) (same).  "Fraud is never presumed and must be particularly pleaded."  *Va. Acad.*, 878 A.2d at 1233 (quoting *Atraqchi*, 788 A.2d at 563); *see also* Fed. R. Civ. P. 9(b).

The plaintiff's fraud allegations do not satisfy Rule 9(b).  While the plaintiff generally alleges that Abbott made "representations that he would 'take care of her,'" Compl. ¶¶ 7, 9, and "[o]n numerous occasions," *id.* ¶ 67, "represented to [plaintiff] and others that [plaintiff] was

indeed an owner of the Restaurant," *id.* ¶¶ 47, 60, 67; *see also id.* ¶¶ 49, 52, 54, 62, these factual allegations nonetheless lack specificity with respect to the particular times these representations were made or how, with any level of detail, Abbott phrased these representations. The plaintiff also asserts that the defendants "authorized [the plaintiff] to exercise control over the Restaurant and act as an owner," *id.* ¶¶ 48, 61, but provides no details about the manner of such authorization, the type of control the plaintiff was allowed to exercise, or the particular actions the plaintiff was allowed to take. The plaintiff's complaint is replete with these sort of threadbare, conclusory allegations. *See, e.g.*, *id.* ¶ 49 ("[The defendants] retained the benefit of [the plaintiff's] own belief and her representations to the public and representations by [the defendants] that [the plaintiff] was indeed an owner of the Restaurant."); *id.* ¶ 50 ("Both [the defendants'] actions reflected [the plaintiff's] ownership interest in the Restaurant, as [the plaintiff] believed she was an owner of the Restaurant, managed the day-to-day operations of the Restaurant, exercised control over many aspects of the Restaurant, and acted as an owner of the Restaurant by furthering the Restaurant's business. . . ."). The plaintiff "has not provided even approximate dates of when fraudulent statements were made to her nor the specific nature of the assurances" the defendants allegedly made regarding the plaintiff's equity in the Restaurant. *Carter v. Bank of Am., N.A.*, 888 F. Supp. 2d 1, 14 (D.D.C. 2012) (Howell, C.J.). The plaintiff's allegations lack sufficient detail about "who made the statements, what was said, when or where these statements were made, and how or why the alleged statements were fraudulent," *Brink*, 787 F.3d at 1127 (citation omitted), and thus do not satisfy Rule 9(b)'s pleading standard.[10]

---

[10] Dismissal of the plaintiff's fraud claim is not inconsistent with allowing the plaintiff's FLSA and WPA claims, which rest on the same factual allegations, to proceed, as Rule 9(b) requires a plaintiff to "state with particularity the circumstances constituting fraud," FED. R. CIV. P. 9(b), while Rule 8(a)(2) merely requires "[f]actual allegations" that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

A district court may dismiss a fraud claim without prejudice where "[t]he sparse and conclusory nature of the allegations supporting the fraud claim make it impossible to determine whether granting leave to amend would be futile." *Malek v. Flagstar Bank*, 70 F. Supp. 3d 23, 31 n.5 (D.D.C. 2014) (Howell, C.J.). Given the possibility that the plaintiff can amend her complaint to allege sufficient factual detail to satisfy Rule 9(b), the plaintiff's fraud claim is dismissed without prejudice. The plaintiff may file an amended complaint pleading fraud with greater particularity. *See* FED. R. CIV. P. 15(a)(2) (directing that "[t]he court should freely give leave [to amend pleadings] when justice so requires.").

### D. The Plaintiff Has Failed To Plead Facts Establishing That She Is Entitled To Declaratory, Injunctive, or Accounting Relief In The Form Of An Ownership Stake In The Restaurant.

The defendants argue that the plaintiff's claims for a declaratory, injunctive, and accounting relief must be dismissed because the plaintiff has failed to allege facts establishing her entitlement to such remedies. The plaintiff seeks declaratory, injunctive, and accounting relief entitling her to a fifty percent ownership stake in the restaurant. Compl. ¶¶ 45–65. Specifically, the plaintiff seeks a declaration that she holds a fifty percent equity stake in the restaurant, an injunction requiring the defendants to convey to her such stake, and an accounting of all of the restaurant's revenue and expenses from 2003 through the present, as well as entry of judgment against the defendants in the amount due to the plaintiff. *Id.*

Declaratory judgments, injunctions, and accountings are not freestanding causes of action, but remedies that a plaintiff may obtain only upon prevailing on some independent claim. *See C&E Servs., Inc. of Washington v. D.C. Water & Sewer Auth.*, 310 F.3d 197, 201 (D.C. Cir. 2002) ("[T]he Declaratory Judgment Act is not an independent source of federal jurisdiction. Rather, the availability of declaratory relief presupposes the existence of a judicially remediable right." (alterations, internal quotation marks and citations omitted)); *accord Goryoka v. Quicken*

*Loan, Inc.*, 519 F. App'x 926, 929 (6th Cir. 2013) ("[I]njunctive relief . . . [is a] remed[y] and . . . not [a] separate cause[] of action."); *Johnson v. Mao*, 174 F. Supp. 3d 500, 524 (D.D.C. 2016) (Contreras, J.) (same); *Haynes v. Navy Fed. Credit Union*, 52 F. Supp. 3d 1, 10 (D.D.C. 2014) (Kollar-Kotelly, J.) ("[A]n accounting . . . is only appropriate, if at all, after liability has been determined." (citation omitted)); *Bates v. Nw. Human Servs., Inc.*, 466 F. Supp. 2d 69, 103 (D.D.C. 2006) (Walton, J.) ("[Accounting] relief may be obtained at the close of a litigation in actions arising out of a tort where there is an allegation of fraud, especially when there is an additional ground for jurisdiction, such as the existence of a fiduciary relationship." (internal quotation marks and citation omitted)).

The plaintiff's prayers for declaratory, injunctive, and accounting relief each fail because the plaintiff's factual allegations, even if accepted as true, do not "plausibly give rise to an entitlement to [the forms of] relief" she seeks. *Iqbal*, 556 U.S. at 679. The plaintiff recounts the facts underlying her FLSA, WPA, and fraud claims, but identifies no legal authority by which the defendants' conduct entitles her to an ownership interest in the Restaurant or created any fiduciary relationship between the defendants and the plaintiff.[11] Indeed, the plaintiff's lack of equity in the Restaurant is essential for her to prevail on her FLSA, WPA, and fraud claims, as the way that the defendants induced the plaintiff to work for years without pay was by causing

---

[11] The plaintiff cites *Myers Industries, Inc. v. Schoeller Arca Systems, Inc.*, 171 F. Supp. 3d 107 (S.D.N.Y. 2016), for the proposition that "[w]here a count for declaratory judgment is not duplicative or subsumed by other counts in the complaint, a count for declaratory judgment may be brought in a separate count." Pl.'s Opp'n at 14. The plaintiff misreads *Myers Industries*, which involved causes of action pursuant to a "patent license agreement and asset purchase agreement." 171 F. Supp. 3d at 122. *Myers Industries* observed that whether "a declaratory judgment action [] duplicates an available coercive action" is one of several prudential factors that a court considers in exercising "broad discretion" over whether "to exercise jurisdiction over the declaratory judgment action" only after the court determines that "an actual controversy sufficient to invoke the court's subject matter jurisdiction" exists. *Id.* *Myers Industries* does not dispense with the requirement that a plaintiff must have some independent claim against a defendant to obtain a declaratory judgment.

her falsely to believe that she held equity in the Restaurant, and thus was not subject to those employee protection laws.

For these reasons, the plaintiff has failed plausibly to plead an entitlement to declaratory, injunctive, or accounting relief, and so those counts must be dismissed, without prejudice.

### E.  Defendant Brooks Must Be Dismissed.

Defendant Brooks asserts that he is not properly joined as a defendant in this action, as the "[p]laintiff has failed to allege any facts as to Defendant Brooks upon which his liability could be based."  Brooks' Mem. at 2–3.  As the fraud and associated relief claims in Counts IV though VII have already been dismissed, without prejudice, as to all defendants, the only claims remaining against Brooks are the overtime and wage claims in Counts I through III.  As to these claims, the complaint alleges that, although "Brooks had no active role in the operation of the Restaurant," Compl. ¶ 11, he provided "start-up money for the Restaurant," received, upon information and belief, "surreptitiously redirected [] profits" from the Restaurant, and "is a member of the LLC," *id.* ¶¶ 3, 6, 10.  The plaintiff states in the complaint that she "does not know the extent of [Brooks's] purported ownership interest in the Restaurant."  *Id.* ¶ 11.

The FLSA defines the key term "employer" for coverage under the statute to "include[] any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d).  The FLSA definitions, though described as "generally unhelpful," *Henthorn v. Dep't of Navy*, 29 F.3d 682, 684 (D.C. Cir. 1994), must be construed broadly to effectuate the remedial purposes of the statute, *see Morrison v. Int'l Programs Consortium, Inc.*, 253 F.3d 5, 10 (D.C. Cir. 2001).

The Supreme Court has provided guidance "to fill the gap in the statutory text" by looking to "the conventional master-servant relationship as understood by common-law agency

doctrine," *Clackamas Gastroenterology Assocs., P.C. v. Wells*, 538 U.S. 440, 444–45 (2003) (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322–23 (1992)), and examining the "economic reality" of the relationship between the putative employee and employer, *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 301 (1985) ("The test of employment under the [FLSA] is one of 'economic reality.'"); *Goldberg v. Whitaker House Coop., Inc.*, 366 U.S. 28, 33 (1961) (noting that "'economic reality' rather than 'technical concepts' is to be the test of employment"). The over-arching inquiry is whether the defendant is "the kind of person that the common law would consider an employer." *Wells*, 538 U.S. at 445 n.5. This inquiry involves consideration of various factors, which the D.C. Circuit has enumerated to include: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship and (5) the extent to which the work is an integral part of the employer's business." *Morrison*, 253 F.3d at 11.

The Complaint is silent regarding these "economic reality test" factors and simply contains no allegations establishing Brooks' status as an "employer" under the FLSA based upon any alleged degree of control he exercised over employees. Certainly, a corporate officer with an ownership interest may qualify as an employer, jointly and severally liable under the FLSA for unpaid wages, but only "as long as the officer acts, or has the power to act, on behalf of the corporation vis-à-vis its employees." *Wilson v. Hunam Inn, Inc.*, 126 F. Supp. 3d 1, 6 (D.D.C. 2015); *see also Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983); *Del Villar v. Flynn Architectural Finishes, Inc.*, 664 F. Supp. 2d 94, 96–97 (D.D.C. 2009) (denying motion to dismiss individual defendant, who claimed not to "have the power to hire and fire, control work

schedules and supervise employees, determine pay rates or maintain employment records," since this defendant was owner of company employing plaintiff and fired him). In other words, an ownership interest in a company or partnership, "while not dispositive of employer status under the FLSA, certainly raises a plausible inference that the individual possessed the requisite 'operational control' over the covered entity" but only when the complaint also alleges that the owners supervised the employee's "working conditions and controlled her schedule and wages . . . [and] had the ability to hire and fire the corporation's employees and to set their wages and schedules." *Wilson*, 126 F. Supp. 3d at 6.

In this case, the complaint provides only bare-bones allegations about the defendant Brooks' equity interest in the Restaurant and expressly states that he had "no active role" in the Restaurant's operations. These allegations are simply insufficient to sustain an FLSA claim against Brooks as an "employer." At the same time, given the complaint's allegations that the defendants have declined the plaintiff's requests for an accounting and have maintained exclusive control over all the business records, *see* Compl. ¶¶ 63, 64, the claims against Brooks are dismissed without prejudice.

## IV.    CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss are DENIED in part and GRANTED in part. The defendants' motions are granted as to the claims for common law fraud and for declaratory relief, injunctive, and accounting relief, in Counts IV through VII, which counts are dismissed without prejudice, and as to all claims against Brooks, but denied in all other respects. The plaintiff and remaining defendants Abbott and OTR shall, in accordance with the Court's Standing Order ¶ 3, ECF No. 20, file jointly a Meet and Confer Report, by April

14, 2018, with a proposed schedule to govern further proceedings in this case.  An appropriate

Order accompanies this Memorandum Opinion.

Date: March 31, 2018

_____
BERYL A. HOWELL
Chief Judge